

**ORDERED in the Southern District of Florida on April 1, 2026.**

_____
**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:                                                    Case No.: 23-15254-MAM

Andrew Michael Demos,                     Chapter 11

      Debtor.

_____/

**OPINION AND ORDER GRANTING**
**<u>EMERGENCY MOTION FOR SANCTIONS</u>**

This Court strives to provide access to justice to all who seek it. To advance

that goal, the Court provided Debtor's ex-wife, Elaine Demos, with hours of hearing

time in this case. The Court waded through hundreds of pages of motions, notices,

exhibits, and other filed documents, many of which lack typical indicia of formality

and seem AI-generated. The Court provided generous extensions of time (often over the objections of opposing counsel) when each of Ms. Demos's four prior attorneys withdrew. The Court continued to thoughtfully consider Ms. Demos's arguments when she elected to represent herself pro se. The Court listened patiently even when Ms. Demos, an attorney licensed by the New York State Bar, failed to maintain basic courtroom decorum or demonstrate any form of appropriate deference to this Court as an institution of justice.

The time has come for the Court to remind Ms. Demos that the United States justice system is larger than any one dispute, and that all who seek justice in bankruptcy court must yield to the greater good that the institution and the statutes underpinning it serve. This Court is a court of limited jurisdiction because that is what the Constitution, Congress, and the United States Supreme Court have collectively set forth and reaffirmed again and again. It is not a forum for Ms. Demos to air all possible emotional grievances against her former spouse. It is a federal bankruptcy court whose fundamental purpose lies in determining and sometimes modifying debtor and creditor relationships. And, like any other court, once the appellate period has run, its determinations are final.

Approximately three months ago, this Court issued an order (ECF No. 564) (the "Claim Order") determining the amount of Ms. Demos's prepetition claim for domestic support obligations ("DSOs").[1] The Claim Order was the product of extensive analysis undertaken after a full two-day trial during which Ms. Demos,

---

[1] The petition date of this bankruptcy case was July 3, 2023 (the "Petition Date").

2

then represented by counsel, had every opportunity to present her case. Acting as her own star witness, she testified for hours, recounting her version of facts dating back to the years of her marriage, divorce, temporary reconciliation, and second separation from her husband, who is the Debtor in this proceeding.

Despite its willingness to hear all pertinent facts, this Court's job was not to determine whether Ms. Demos ought to be entitled to DSOs as a general matter, or if the marital settlement agreement she entered into with Debtor was fair, equitable, or just. Instead, this Court's only duty was to determine the amount and validity of the proof of claim filed by Ms. Demos as proof of claim number 12 ("Claim 12") for prepetition DSOs owed to her as of the Petition Date.[2] To do so, the Court reviewed extensive documentation regarding amounts Debtor paid to Ms. Demos leading up to the Petition Date and accepted testimony about any assets in which Debtor may have held an interest prior to or as of the date of trial. The Court also accepted expert testimony regarding the amount and validity of Claim 12.

To facilitate its own review of the record and determination of the amount of outstanding prepetition DSOs, the Court compiled, at great effort, its own spreadsheet reconciling the amount of DSOs paid by Debtor prior to the Petition Date and amounts still outstanding. The Court devoted extensive resources to consideration of allegations and testimony in the record regarding Debtor's existing

---

[2] By filing a proof of claim, a creditor subjects itself to the bankruptcy court's equitable power. *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (citing *Granfinanciera v. Nordberg*, 492 U.S. 33 58-59 (1989)). The Court accepted the amount asserted in Claim 12 as a DSO and the parties have not disputed its priority under applicable bankruptcy law. 11 U.S.C. § 507(a)(1) (describing DSOs as priority claims).

assets. The Court also undertook legal research on DSOs in bankruptcy, payment of DSOs through chapter 11 plans, and all other necessary areas of law.

The Court reviewed the MSA in detail. It recognized the MSA as a valid, binding agreement, modified only as stated in later written agreements executed by both Ms. Demos and Debtor. The Court did not question the binding effect of prepetition state court orders, nor would it have attempted to do so. It accepted all prior state court determinations and orders as final.

Haven undertaken the requisite legal and financial analysis, the Court then rendered a written opinion and order—the Claim Order—explaining in detail its rationale and calculations. The Claim Order limited the amount of the prepetition DSOs asserted by Ms. Demos in Claim 12 to $193,025.79 and reaffirmed the Court's prior determination that it would abstain from any determination of postpetition DSOs.

That Order is now final.

The appellate period for the Claim Order expired on January 6, 2026. Ms. Demos, a licensed attorney, elected not to appeal.[3] No state court should act as a court of appeal with respect to the Claim Order, nor could it. The appellate path for bankruptcy opinions and orders is unusual, requiring a stopover in the district court prior to advancing to the relevant Circuit Court of Appeal (or going through a BAP court, in some jurisdictions). Despite those unusual quirks, this is a federal trial

---

[3] The record reflects that Ms. Demos knows how and when to file a notice of appeal. *See* ECF Nos. 256, 535, 536, 537, and 538 (Notices of Appeal) and ECF Nos. 358, 549, 552, 569, and 570 (orders dismissing each appeal).

court, and it has the authority to enter final determinations on proofs of claim filed in a bankruptcy case. That is a core function of this Court.

Ms. Demos's recent decision to seek a different judicial determination from a New York state court of the amount of prepetition DSOs owed by Debtor was unwise at best. As an attorney, she is tasked with a greater level of knowledge than a layperson. In law school, she undoubtedly learned that it is improper to ask any court other than an appellate court to review the decision of a trial court.

In other words, Ms. Demos knew or should have known that seeking to enhance her prepetition DSO claim against Debtor, in an amount greater than the amount allowed in the Claim Order, in a state court proceeding while Debtor's active bankruptcy case is pending, was improper. Seeking alternate judicial relief on a claim upon which this Court had previously entered not just an order, but a full written opinion, is breathtaking. It was, undoubtedly, a violation of the automatic stay.[4]

Now all the Court must do is explain exactly why the automatic stay was violated, citing to the applicable portions of the Bankruptcy Code, and determine the amount of damages Ms. Demos must pay to Debtor.

So we begin the sanctions analysis. Again.[5]

---

[4] The Court presumes that Ms. Demos failed to share a copy of the Claim Order with her New York counsel, and that counsel is unaware of this Court's prior rulings. The Court reserves jurisdiction to impose sanctions upon counsel if necessary.

[5] This Court sanctioned Ms. Demos $4,950 approximately one year ago for a prior knowing violation of the Bankruptcy Code under 11 U.S.C. § 362(k). ECF No. 247 (*Order Granting Motion for Sanctions for Stay Violation*).

LEGAL STANDARD

A. Automatic Stay and DSOs

Section 362 of the Bankruptcy Code imposes an automatic stay at the commencement of a bankruptcy case. It is one of the most fundamental aspects of bankruptcy law, so basic that even non-lawyers are often well-versed in its application. It provides, in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
   (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
   (4) any act to create, perfect, or enforce any lien against property of the estate;
   (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
   (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
   (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
   (8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

6

This section of the Bankruptcy Code provides a breathing spell from creditors, stopping all collection efforts, harassment, and foreclosure actions. *Ellison v. Northwest Engineering Co.*, 707 F.2d 1310, 1311 (11th Cir. 1983). The automatic stay remains in place until entry or denial of discharge or, alternatively, until dismissal or closure of a bankruptcy case.

Section 362 does have a number of exceptions. In this case, the notable one is § 362(b)(2), which provides, in relevant part:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
> [. . .]
> (2) under subsection (a)—
> (A) of the commencement or continuation of a civil action or proceeding—
> (i) for the establishment of paternity;
> (ii) for the establishment or modification of an order for domestic support obligations;
> (iii) concerning child custody or visitation;
> (iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or
> (v) regarding domestic violence;
> (B) of the collection of a domestic support obligation from property that is not property of the estate;
> (C) with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute ….

Those exceptions, however, do not permit a dissatisfied spouse to seek an alternative adjudication of a claim for prepetition DSOs filed in a bankruptcy case once the amount in dispute is fixed by this Court, as it was through entry of the Claim Order. Construing the exceptions to § 362(a) in that manner would eviscerate the Bankruptcy Code and many years of well-established appellate law. When a party is

dissatisfied with a ruling of this Court after petitioning this Court for a judicial determination, they must seek reconsideration of the Court's order or file an appeal from the Court's order in a timely manner. Those are the available remedies.

A careful read of the statute will also show that § 362(b)(2)(B) applies only to property that is not property of the estate. Section 362(b)(2)(C) addresses withholding income that is property of the estate or the debtor, which includes post-petition income in a chapter 11 case for an individual. Neither exception permits state court litigation seeking a secondary judicial determination of a prepetition DSO claim previously liquidated by a bankruptcy court pursuant to a final, non-appealable order.[6]

B.  Violation of the Automatic Stay

A stay violation is willful if the violating party (1) knew the automatic stay was in effect, and (2) intended the actions that violated the stay. *In re Lyubarsky*, 615 B.R. 924, 929 (Bankr. S.D. Fla. 2020) (citing *Jove Eng'g v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1555 (11th Cir. 1996)). In those instances, §362(k) permits an injured individual to recover actual damages, including costs and attorneys' fees. *Id.* at 934. It does not matter whether the violator specifically intended to violate the stay; all that matters is that the violator intended to perform the act. *In re Daya Medicals, Inc.*, 560 B.R. 855, 859 (Bankr. S.D. Fla. 2016) (internal citations omitted). In limited

---

[6] This Opinion does not address any request for liquidation of outstanding postpetition DSOs. The Court makes this clarification because the New York Filings disregard the Petition Date and intermingle the request for all DSOs as if the bankruptcy case did not exist. This is improper for the reasons stated on the record in this bankruptcy case and in numerous prior orders of this Court. *See, e.g.*, ECF No. 638 (reaffirming limited stay relief to liquidate outstanding postpetition DSO obligations).

circumstances, injured debtors may also recover punitive damages. § 362(k); *Lyubarsky*, 615 B.R. at 929.

ANALYSIS

As the Court indicated before, there is little work for the Court to do in this opinion. The actions are public record and speak for themselves. On February 24, 2026, Ms. Demos personally signed and caused to be filed a sworn affidavit in the Supreme Court of New York, Suffolk County, in support of an order to show cause dated February 27, 2026 (collectively, the "New York Filings") attesting that (1) Debtor filed his bankruptcy case in bad faith, (2) Debtor has failed to pay prepetition obligations, and (3) the bankruptcy estate includes assets it should not.[7]

The New York Filings assert that Debtor should be compelled to immediately pay all outstanding prepetition DSOs.[8] Ms. Demos made these sworn allegations despite several rulings to the contrary from this Court.[9] Ms. Demos was aware of the existence of the automatic stay and intended the New York Filings to occur. *Lyubarsky*, 615 B.R. at 929. She is also aware of the many court orders regarding Debtor's prepetition and postpetition obligations, property of the bankruptcy estate, and the potential for Debtor to reorganize his affairs—including priority payment of

---

[7] Any determination as to what assets must be included in Debtor's bankruptcy estate falls squarely within the core jurisdiction of this Court. 11 U.S.C. § 541.

[8] *See, e.g.*, ECF No. 641-1, pdf page 26 (page 20 of the New York Filings), describing prepetition DSOs from 2020-2023. *See also* the tabulated summary beginning at the bottom of the same page, commencing with January 2023, over six months prior to the Petition Date.

[9] *See, e.g.*, ECF Nos. 532 (*Order Denying Motion to Dismiss Case*), 564 (*Order Sustaining in Part and Overruling in Part Debtor's Objection to Claim of Elaine Demos (POC #12)*), 620 (*Order Denying Motion to Compel Immediate Payment of Postpetition Domestic Support Obligations*), and 638 (*Order Denying Motion for Relief from The Automatic Stay*).

outstanding DSOs—through the chapter 11 plan process.

This Court, in an exercise of its core jurisdiction and at Ms. Demos's request, held a full trial and determined the amount of Ms. Demos's outstanding claim for prepetition DSOs. As noted earlier, the Petition Date of this bankruptcy case occurred on July 3, 2023. This Court's Claim Order, entered on December 23, 2025, encompasses all outstanding prepetition DSOs which were due and owing as of the Petition Date. The appellate period for the Claim Order expired on January 6, 2026. That determination became final and non-appealable over two months ago.

Apparently dissatisfied with this Court's ruling, Ms. Demos sought the aid of another trial-level court to reverse what this Court ruled in the Claim Order. That cannot be. And, in the context of stay violations, her actions leave no room for judicial discretion. The Court must impose sanctions because § 362 says so. 11 U.S.C. § 362(k)(1) (debtor harmed by willful stay violation "shall" recover damages). The only remaining question is in what amount.

A. <u>Motion and Responsive Arguments</u>

Debtor's counsel filed an emergency motion seeking sanctions for Ms. Demos's stay violation on March 27, 2026 (ECF No. 641) (the "<u>Motion</u>"). The Court held a hearing on the Motion on April 1, 2026 at 1:00 p.m. (the "<u>April 1 Hearing</u>"). Less than two hours before the hearing, Ms. Demos filed a written response (ECF No. 662) (the "<u>Response</u>") to the Motion.[10]

---

[10] The Court notes that the submission of the Response failed to comply with Local Rule 5005-1(F)(1) and (2), because (1) the Response was not filed at least two business days prior to the April 1 hearing, (2) Ms. Demos failed to include a legend on the Response indicating the emergency nature of the filing,

10

Despite the tardiness of the Response, the Court nonetheless reviewed it in full and allowed Ms. Demos to present all arguments. Ms. Demos once again appeared via Zoom from her vehicle. Throughout the proceeding, she voiced her arguments at top volume, stridently asserting her view of legal and factual issues.

Among other allegations, Ms. Demos contended that Debtor has entirely failed to pay all DSO obligations. This statement is not accurate, and the record contradicts it.[11]

Ms. Demos summarized her arguments by stating that she believes Debtor's bankruptcy process is "blocking" her "enforcement rights" under the MSA. Throughout her thirty-minute oral argument, she characterized Debtor as obstructionist, this Court as lacking jurisdiction to deal with DSO obligations (including those asserted in Claim 12),[12] and Debtor's entire bankruptcy process as being undertaken solely to harm her. She stated her strong belief that she is a victim and that judicial process within all courts (state and federal) is failing her as an innocent prior spouse who is seeking payment that she is legally entitled to under the MSA.

Debtor's counsel provided a measured, thoughtful reply that itemized DSO payments Debtor recently made, including school tuition and health insurance, and specifically identified the statements in the New York Filings by which Ms. Demos

---

(3) Ms. Demos failed to provide the courtroom deputy with notice of the filing of the Response, and (4) Ms. Demos failed to email a copy of the Response to Debtor's counsel.

[11] *See* the Claim Order.

[12] Ms. Demos did not raise these jurisdictional arguments on appeal.

sought an award of prepetition DSOs. Debtor's counsel described the status of Debtor's payment of postpetition DSOs as counsel understood them, and clarified that the Motion does not address or seek to block any attempt by Ms. Demos to enforce postpetition DSOs.

Ms. Demos acknowledged that the New York Filings included a request to enforce prepetition DSOs in addition to the postpetition DSOs she alleges are outstanding.[13]

B. Actual Damages, Including Costs and Attorney's Fees

Section 362(k) requires the Court to impose sanctions for actual damages, including costs and attorneys' fees. The Court will do so. To facilitate the necessary calculation, the Court will direct Debtor's bankruptcy counsel to file an accounting of all attorneys' fees incurred responding to the portion of the New York Filings which seek a secondary determination of prepetition DSOs (the "Accounting"). The Accounting should include fees and costs from all attorneys to be paid by Debtor, including bankruptcy and family law attorneys who provided responsive legal services, whether in Florida or New York, relating to the portion of the New York Filings which seek a secondary determination of prepetition DSOs.

C. Punitive Damages

Punitive damages are rarely awarded. In this Court's experience, most creditors are abashed upon learning of a potential stay violation and take immediate

---

[13] Those postpetition DSOs are before the Florida state court and this Court has abstained from any determination in favor of the state court. *See, e.g.*, ECF No. 638 (referring to prior decision to abstain with respect to the determination of the amount of postpetition DSOs).

steps to correct the violation. Ms. Demos, however, belligerently asserted that she had done nothing improper when the Court was first apprised at a hearing of the stay violation, and she reiterated that position during the April 1 Hearing. Since learning of the Motion, Ms. Demos has not supplied the Court with any evidence of withdrawal of the portion of the New York Filings that seek a secondary determination of prepetition DSOs or proof of any subsequent filing with that court to clarify the previously adjudicated status of Claim 12.

The Court also observes that this is the second time it has been forced to draft an opinion and order sanctioning Ms. Demos for a willful and knowing violation of the automatic stay.[14] Even so, the Court will exercise the greatest amount of lenience possible. The Court will grant Ms. Demos a brief period of time to amend the New York Filings to withdraw her request for a secondary determination of prepetition DSOs, and promptly file that amendment with a clear explanation to the New York state court as to the reason for the amendment, along with copies of the Claim Order and this Opinion. Should she fail to timely do so, the Court will impose punitive damages for her continued failure to abide by this Court's orders.

D. Additional Clarifications and Alternate Bases for Sanctions

The Court has repeatedly abstained from any determination of the liquidated amount of outstanding postpetition DSOs. It will continue to do so in deference to the Florida and New York state courts. As part of that exercise of abstention, on February

---

[14] ECF No. 247 (*Order Granting Motion for Sanctions for Stay Violation*) (imposing sanctions for willful violation of the automatic stay).

9, 2024, the Court granted stay relief to both Debtor and Ms. Demos to (1) seek amendment or modification of the MSA, (2) liquidate outstanding postpetition DSOs, and (3) obtain a final judgment from the state court reflecting the liquidated amount of outstanding postpetition DSOs.[15] That stay relief was and is limited. It did not and does not encompass Ms. Demos's attempts to reassert prepetition claims for DSOs in an amount greater than what this Court has already determined were due as of the Petition Date pursuant to final order.

Ms. Demos sought belated stay relief from this Court to submit and prosecute the New York Filings. The Court denied her request (ECF No. 612, filed after the New York Filings) via written order (ECF No. 638, denying stay relief as to prepetition DSOs, the amount of which had previously been determined by the Claim Order, and clarifying that stay relief had previously been granted to Ms. Demos to liquidate solely the amount of postpetition DSOs in state court). Section 105 of the Bankruptcy Code and the Court's own inherent contempt power to enforce compliance with court orders provide another strong basis upon which the Court may impose sanctions. *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1574-76 (11th Cir. 1995).

The New York Filings are the latest example of Ms. Demos's repeated failure to follow court orders. The Court has provided Ms. Demos time to respond to Debtor's request for sanctions.[16] *Id.* The Court concludes that Ms. Demos caused the New York

---

[15] ECF No. 103 (*Agreed Order Granting in Part Movant Elaine Demos's Motion for Relief from Stay*), as amended in ECF No. 525 (*Order Granting Debtor's Motion to Amend Agreed Order Granting in Part Movant Elaine Demos's Motion for Relief from the Automatic Stay*).

[16] ECF No. 645 (Notice of Hearing).

14

Filings to occur in bad faith and in direct contravention of this Court's existing orders. The Court will reserve ruling on the issue of whether additional sanctions should be imposed on Ms. Demos for contempt of court or upon counsel to Ms. Demos in the New York matter, should prosecution of the New York Filings in their present form continue.

E. Forum Shopping

Although it does not bear on this Court's present determination of sanctions, the Court must observe before concluding that Ms. Demos's latest stay violation indicates that she may be forum shopping. Both she and Debtor are Florida residents and have been for some time. Ms. Demos domesticated and sought to enforce the MSA in Florida. She petitioned this Court (located in Florida) for a determination of the amount of outstanding prepetition DSOs and received stay relief to pursue liquidation of postpetition DSOs in state court. She has an active case in the Fifteenth Judicial Circuit for the State of Florida (Case No. 20-2024-DR-004342-XXXA-SB) and engaged Florida counsel to represent her in that matter.

Because this Court abstained from liquidation of postpetition DSOs, it will not dig any deeper into the question of whether Ms. Demos may properly petition the New York court for relief that might already be before the Florida state court. It will leave that issue for the New York and Florida courts to determine.

ORDER

The Court ORDERS that:

1.      Debtor's Motion (ECF No. 641) is GRANTED.

15

2.   Debtor's counsel is DIRECTED to file the Accounting described in this Opinion on or before **April 15, 2026**.

3.   Ms. Demos is DIRECTED to pay the Accounting in full on or before **April 30, 2026**.

4.   The Court will not grant any request for an extension of time to pay the Accounting, but the parties may consensually agree to extended payment terms if they wish.

5.   Ms. Demos is DIRECTED to:

a.  withdraw or amend the New York Filings to eliminate any request for a determination of prepetition DSOs,

b.  provide an explanatory filing to the New York state court describing the previously adjudicated status of her Claim 12, and

c.  file a copy of the Claim Order and this Opinion with the New York state court (collectively, the "Remedial Actions").

6.   Ms. Demos must perform or cause the Remedial Actions to be performed on or before **April 3, 2026**. Failure to do so will result in the imposition of punitive damages of no less than $250 per calendar day, in addition to any additional attorneys' fees, costs, or damages for harm to Debtor, including emotional distress.

7.   The Court declines to impose sanctions upon counsel to Ms. Demos in the New York state action at this time but reserves jurisdiction to revisit this issue if later circumstances demonstrate that it is necessary to do so.

16

8.  The Court reserves ruling on the issue of additional sanctions against Ms. Demos for contempt of court.

9.  This Court retains jurisdiction to enforce the terms of this Opinion and Order.

###

Copy to:

Elaine Demos
17686 Cadena Drive
Boca Raton, FL 33496
lenidemos7@gmail.com

County Clerk
Supreme Court of the State of New York, County of Suffolk
310 Center Drive
Riverhead, NY 11901
*Re: Index No. 06664-2018*

ATTN: Chief Clerk's Office
Robert Serva, Chief Clerk
Supreme Court of the State of New York, County of Suffolk
1 Court Street
Riverhead, NY 11901
*Re: Index No. 06664-2018*

Vesselin Mitev, Counsel to Ms. Demos in *Demos v. Demos* (Supreme Court of the State of New York, County of Suffolk, Index #06664-2018)
MITEV Law Firm
1214 North Country Road
Stony Brook, New York 11790
vess@mitevelaw.com

Jennifer Rosenkrantz, Counsel to Debtor in *Demos v. Demos* (Supreme Court of the State of New York, County of Suffolk, Index #06664-2018)
200 Garden City Plaza
Suite 301
Garden City, NY 11530
jrosenkrantz@krdslaw.com

Fifteenth Judicial Circuit Court

17

South County Courthouse
200 West Atlantic Ave.
Delray Beach, FL 33444
ATTN: Case No. 50-2024-DR-004342-XXXA-SB (Judge Rowe)

Joel M. Weissman, P.A., Attorney for Ms. Demos in *Demos v. Demos* (15th Judicial Circuit for the State of Florida, Case No. 20-2024-DR-004342-XXXA-SB)
515 N Flagler Dr Ste 801
West Palm Beach, FL 33401-4324
joel@jmwpa.com

Karen Weintraub, Attorney for Debtor in *Demos v. Demos* (15th Judicial Circuit for the State of Florida, Case No. 20-2024-DR-004342-XXXA-SB)
Sidweber & Weintraub, P.A.
3020 NE 32nd Ave Ste 301
Fort Lauderdale, FL 33308-7204
karen@sidweberlaw.com

Dana Kaplan, Attorney for Debtor

*Attorney Kaplan is directed to serve a copy of this Opinion and Order upon all interested parties, including those listed on this Opinion, following all applicable rules.*

18